# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION
### CIVIL ACTION NO. 2:13CV37-RLV

| | | |
|---|---|---|
| VICKIE ELLEN BASTY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff Vickie Ellen Basty's Motion for

Summary Judgment (Doc. 8), as well as Defendant Commissioner of Social Security's Cross-

Motion for Summary Judgment (Doc. 11) pursuant to Rule 56 of the Federal Rules of Civil

Procedure.

## I.      Administrative History

On September 15, 2010, Vickie Ellen Basty filed a Title II application for a period of

disability insurance benefits. (Tr. at 4.) At this time, she also filed a Title XVI application for

supplemental security income. (*Id*.) In her application, Plaintiff stated she was born on October

29, 1960 and has a 9th grade education level. (Tr. at 25.) She also indicated she had past relevant

work experience as a knitter. (Tr. at 21.) Plaintiff initially alleged she became disabled on July

25, 2009 due to chronic obstructive pulmonary disease, carpel tunnel syndrome, cervical

degenerate disease, depression, and anxiety. (Tr. at 4.)

Plaintiff's claims were denied initially on November 3, 2010, and upon reconsideration

on April 8, 2011. (Tr. 15). Plaintiff submitted a written request for a hearing on May 2, 2011.

(Tr. at 4.) Administrative Law Judge (ALJ) Gregory M. Wilson held a video hearing on June 26,

2012. (*Id.*). At the hearing, the Plaintiff moved to amend the alleged onset date of her disabilities to October 29, 2010. (*Id.*). The ALJ denied Plaintiff's claims for benefits and Plaintiff moved for a review of the ALJ's decision on September 20, 2012. (Doc. 8 at 1.) The Appeals Council denied her request and Plaintiff now seeks judicial review from this court. (*Id.*)

## II.     Standard of Review

Under 42 U.S.C § 405(g), this Court can review the final decision of the Commissioner, but must limit its review to (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court will not re-weigh the evidence or substitute its judgment for that of the Commissioner if the Commissioner's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). The Fourth Circuit has held that "supported by substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hays*, 907 F.2d at 1456 (quoting *Richardson,* 402 U.S. 389, 401 (1971)). To be substantial the evidence must be "more than a mere scintilla" *Richardson*, 402 U.S. at 401. It is the Commissioner's duty, not the duty of the courts, to review the available evidence to resolve conflicts and make findings of fact. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). Therefore, the Commissioner's "finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986).

## III.     The ALJ's Five Step Evaluation Process

The Social Security Administration has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

impairment" which is expected to last for a period of at least 12 months. 20 C.F.R. § 404.1505(a). Under the Social Security Act, the ALJ must follow a five step sequential process to determine if an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920.  If the ALJ determines at any step in the evaluation process that the claimant is not disabled, the process will not continue on to the next step.

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. Substantial gainful activity involves doing significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572(a),(b), 416.972(a),(b).  At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  A severe impairment is one that "significantly limits" the claimant's ability to do "basic work activities." 20 C.F.R. §§ 404.1520(d), 416.920(d). At step three, the AJL determines if the claimant's impairment is sufficiently severe to meet the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. If the claimant's impairment meets the criteria of this listing, he or she will be considered disabled. *Id*. At step four, the AJL determines whether the claimant has the residual functioning capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant's residual functioning capacity is his or her ability to do physical and mental work activities despite his or her impairments. 20 C.F.R. §§ 404.1520(e). If the claimant is unable to perform his or her past relevant work, the AJL will proceed to the fifth step in the analysis. 20 C.F.R. §§ 404.1520(g), 416.920(g). In the last step of the analysis, the AJL determines if the claimant is able to adjust to do other work. *Id*. If the claimant can adjust to other work, the AJL will determine the claimant is not disabled. *Id*.

### III.    The ALJ's Findings

The ALJ found that the Plaintiff had not engaged in substantial gainful activity since

October 29, 2010. (Tr. at 7). He also found that the Plaintiff suffered from the following severe

impairments: chronic obstructive pulmonary disease, carpel tunnel syndrome, and cervical

degenerate disease. (*Id*.) However, the AJL concluded that the Plaintiff's impairments did not

meet the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[1] (Tr. at

10.)  The AJL determined the Plaintiff was not disabled because she had the residual functioning

capacity to perform a wide range of work. (Tr. at 12.) The AJL found the Plaintiff had the

following limitations: she could occasionally[2] use her dominant right upper extremity for

handling, fingering, and feeling; she could only frequently[3] use her left upper extremity for

handling, fingering, and feeling; she could frequently reach overhead; and she should avoid

exposure to fumes. (*Id*.)  Although the AJL noted that the Plaintiff was unable to perform her

past relevant work as a knitter because of her limitations, he concluded that given her age,

education, and experience level there was a significant number of other jobs she could perform.

---

[1] More specifically, the AJL concluded at step three that the Plaintiff's impairments, both singly, and in combination, did not meet the severity of any impairment in the Listing of Impairments. The ALJ noted that, "in order to have a respiratory disorder which meets the severity of the listed impairments in 3.02 (Chronic pulmonary insufficiency), there must be medical evidence of an FEV1 equal to or less than the values specified." Plaintiff's medical records did not include a pulmonary function test to measure her FEV1 so the ALJ concluded she did not meet this listing. The ALJ found the requirements of listing 1.02 (Major dysfunction of a joint) did not apply because the objective evidence did not characterize a gross anatomical deformity. The ALJ also concluded that Plaintiff did not have a back disorder which met the severity of the impairments listed in 1.04 (Disorders of the spine) because she did not have medical evidence of (1) nerve root damage; (2) spinal stenosis; or (3) lumbar spinal stenosis. Lastly, the ALJ concluded Plaintiff's mental impairment did not meet the criteria in listing 12.06 because she did not have at least two marked limitations and was able to function independently outside of her home.

[2] Here, "occasionally" means the individual can perform the activity up to 1/3 of the time. *See Dictionary of Occupational Titles*, App. C. (4th ed. 1991), available at 1991 WL 688702.

[3] "Frequently means the individual can perform the activity 1/3 to 2/3 of the time. *See Dictionary of Occupational Titles*, App. C. (4th ed. 1991), available at 1991 WL 688702.

(Tr. at 21.) The ALJ based this finding on testimony given by the vocational expert. (Tr. at 22.)

The vocational expert noted that given the Plaintiff's age, education, experience, and residual

functioning capacity, she would be able to perform the requirements of medium to light unskilled

occupations such as a hospital cleaner, a sandwich maker, a rental clerk and an usher. (*Id*.) The

ALJ concluded that the occupations listed by the vocational expert exist in significant numbers in

the national economy and thus a finding of "not disabled" was appropriate under 20 C.F.R. §

404.1505(a). (*Id*.)

## IV.  Discussion

In her motion for summary judgment, Plaintiff Basty presents four issues: (1) whether the

AJL properly evaluated the opinions of the treating and examining physicians; (2) whether the

ALJ correctly assessed the Plaintiff's residual functioning capacity; (3) whether the ALJ

followed agency policy in relying on the vocational expert; and (4) whether the ALJ properly

assessed the credibility of the claimant. This court finds that there is substantial evidence to

support the ALJ's finding on each of these issues. For the following reasons, Plaintiff's motion

for summary judgment is <u>denied</u> and Defendant's motion for summary judgment is <u>granted</u>.

### A. The AJL Properly Considered the Opinions of the Treating and Examining Physicians

Plaintiff argues that the ALJ improperly rejected the opinions of Ms. Basty's treating

physicians who opined she was unable to work due to her disability. A treating physician's

opinion on the nature and severity of the condition must be given controlling weight if it is "well

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the record." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2). In reviewing applications for Social Security benefits, this Court has held an

adjudicator's evaluation of medical opinions "will generally not be disturbed absent some

indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded." *McDowell v. Astrue,* No. 3:11-cv-652-RJC-DSC, 2012 WL 4499336, at *3 (W.D.N.C. Aug. 2, 2012) (Mag. J.) (citing *Christian v. Apfel*, No. 98-1673, 168 F.3d 481 (4th Cir. Dec. 31, 1998)), *adopted*, 2012 WL 4499283 (W.D.N.C. Sept. 28, 2012).

### 1. Dr. Varnadore

First, Plaintiff states that the ALJ failed to give controlling weight to opinions held by Dr. Greg Varnadore. Plaintiff contends that as Ms. Basty's treating physician, Dr. Varnadore is the medical professional most able to provide a detailed picture of her history of medical impairments.

The ALJ properly explained his reasoning for giving less than controlling weight to Dr. Varnadore's opinions. According to the ALJ, Dr. Varnadore's opinions were inconsistent with other medical evidence in the record as well as with Ms. Basty's daily activities. (Tr. 18, 29−30). The ALJ noted that Dr. Varnadore's opinion that Ms. Basty had only limited ability to sit, stand, bend and squat was inconsistent with the consultative medical evaluation conducted by Dr. Burgess, *discussed supra,* who reported Ms. Basty had no difficulty with any of these movements. (Tr. 29). The ALJ critically observed that Dr. Varnadore's suggested limitation as to claimant's ability to stand or sit was not supported by any underlying physical or mental limitation.[4] (Tr. 29). The ALJ noted also that Dr. Varnadore did not appear to base the sit/stand limitation on claimant's COPD. (Tr. 30). In fact, Dr. Varnadore consistently reported that Ms. Basty's lungs were clear, which would have been inconsistent with the pulmonary function study

---

[4] The ALJ referenced x-rays of Ms. Basty's cervical spine (benign with minimal findings), physical exams of her cervical spine revealing no cervical spasms, sensation intact upper extremities, and treatment notes indicating that claimant did not appear in any acute distress. (Tr. 29) (Exhibits B9F, B8F12). The ALJ also noted that Ms. Basty did not experience fatigue during the pulmonary function study. (Tr. 29) (Exhibit B5F).

conducted by Dr. Burgess. (Tr. 29−30). In fairness, the ALJ recognized that Dr. Varnadore did

not have the benefit of the pulmonary function test. (Tr. 29). With respect to claimant's daily

activities, the ALJ also noted that Ms. Basty's boyfriend stated she had no difficulty performing

these tasks. (Tr. 18-19.) The ALJ also commented on Dr. Varnadore's injection treatment done

in March 2010 that improved Ms. Basty's condition in her right hand. (Tr. 29). The ALJ

suggested that "if a regular treatment plan of those injections were followed, claimant may

improve." (Tr. 29).

In light of these inconsistencies, the ALJ found Dr. Varnadore's opinions less persuasive

and only entitled to limited weight. The ALJ's assignment of limited weight is supported by

substantial evidence.

### 2. Dr. Kessler

Second, Plaintiff argues that the ALJ did not give proper weight to the independent

consultative opinion conducted by Dr. Patrick Kessler. Dr. Kessler opined that Ms. Basty had

numbness in her upper left extremity that could be consistent with a pinched nerve coming from

her neck or resulting from carpal tunnel. Defendant argues that Dr. Keesler examined Ms. Basty

only on one occasion and therefore cannot be considered a treating physician. In any event, Dr.

Kessler's findings do not suggest that Plaintiff has any limitations beyond those identified within

the ALJ's RFC.

Because Dr. Kessler cannot properly be considered a treating physician within the

meaning of the regulations, the ALJ is not required to give his opinions controlling weight. A

"treating physician is a physician who has observed the plaintiff's condition over a prolonged

period of time." *See Rogers v. Barnhart*, 204 F.Supp. 2d 885, 893 (W.D.N.C. May 23, 2002). Dr.

Kessler has not examined or monitored Plaintiff's condition over a prolonged period of time and

thus the AJL is not required to give controlling weight to his report. Additionally, even if Dr.

Kessler's opinions had been afforded greater weight, the ALJ's findings in the case would likely

remain the same. In his RFC finding, the AJL found that Ms. Basty could only frequently use her

non-dominant left upper extremity for handling, fingering, feeling, and reaching overhead. This

finding is consistent with Dr. Kessler's opinion that Plaintiff may be suffering from a pinched

nerve.

### 2. Dr. Burgess

Lastly, Plaintiff addresses the limited weight given to the opinions of Dr. Stephen

Burgess of the North Carolina Department of Health and Human Services. Dr. Burgess found

that Ms. Basty was limited in her ability to speak, was unable to write or pick up coins without a

great deal of difficulty, and was unable to form a normal pincher grasp with any strength. As a

result of his findings, Dr. Burgess diagnosed Ms. Basty with severe carpel tunnel, COPD, and

depression. Plaintiff argues that these diagnoses should be giving controlling weight by the ALJ.

Here, the court will not disturb the ALJ's finding with respect to Dr. Burgess's report.

The ALJ noted that he found it suspicious that Dr. Burgess reported that Ms. Basty was

moderately impaired in her ability to speak, yet the ALJ witnessed no such limitation during her

testimony. (Tr. 17.) The ALJ explained that based on his own personal observations during

Plaintiff's testimony at the administrative hearing, claimant's ability to speak was not at all

lacking. (*Id*.) Based on this inconsistency the ALJ was hesitant to adopt any portion of Dr.

Burgess's report. (*Id*.)  Substantial evidence supports the AJL's analysis with respect to Dr.

Burgess.

**B. The ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff argues that the AJL erred in his formulation of Ms. Basty's residual functional

capacity ("RFC"). A RFC is "an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis." 1-11

Social Security Practice Guide § 11.05. The Social Security Ruling 96-8p addresses the factors

the ALJ must consider in evaluating the RFC. The ruling states:

> The RFC assessment must be based on *all* of the relevant evidence in the
> case record such as:
> - Medical history,
> - Medical signs and laboratory findings,
> - The effects of treatment, including limitations or restrictions
>   imposed by the mechanics of treatment (e.g., frequency of
>   treatment, duration, disruption to routine, side effects of
>   medication),
> - Reports of daily activities,
> - Lay evidence,
> - Recorded observations,
> - Medical source statements,
> - Effects of symptoms, including pain, that are reasonably attributed
>   to a medically determinable impairment,
> - Evidence from attempts to work,
> - Need for a structured living environment, and
> - Work evaluations, if available.

(SSR 96-8p.)

Based on the record evidence, the AJL found the Plaintiff could occasionally use her

dominant right upper extremity for handling, fingering, and feeling; could only frequently use

her left upper extremity for handling, fingering, and feeling; could frequently reach overhead;

and should avoid exposure to fumes. The AJL concluded that although Plaintiff had several

manipulative limitations, she had the RFC to perform a wide range of work at all exertional

levels. In reaching his conclusion, the ALJ noted the Plaintiff had three severe impairments:

chronic obstructive pulmonary disease, carpel tunnel syndrome ("CTS"), and cervical

degenerative disc disease. The ALJ accounted for Plaintiff's CTS and cervical degenerative disease by limiting Plaintiff's reaching overhead bilaterally to "frequently." The ALJ also limited Plaintiff's fingering, feeling, and handling to "occasionally" on her right and "frequently" on her left.

Plaintiff argues that in formulating the RFC, the ALJ improperly based his findings on the opinion of Dr. Robert Gardner from the State Disability Determination Services and rejected the opinions of Ms. Basty's treating physicians including Drs. Burgess and Varnadore. Social Security Ruling 96-8p states, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." As explained in "Section A," *supra*, the ALJ's rationale behind assigning limited weight to the opinions of Drs. Burgess and Varnadore is supported by substantial evidence. Additionally, as a state agency physician, Dr. Gardner is "highly qualified [to opine] … in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Therefore, the AJL's reliance on Dr. Gardner's opinions in formulating Plaintiff's RFC was proper.

The ALJ's RFC analysis was based on substantial medical evidence in the record. Dr. Gardner opined that Plaintiff had a full range of motion through her upper extremities and had a normal range of motion in her joints of fingers in both hands. An exam of Plaintiff's hands revealed no tenderness, redness, warmth, or swelling. The ALJ also noted that medical records revealed there was significant angulation in the joints of the Plaintiff's thumbs which were more significant on the right than on the left, the Plaintiff was able to make a fist bilaterally though weakly, and Plaintiff was unable to make a pincher grasp with any strength. Plaintiff was able to write and pick up coins with a great deal of difficulty on either hand. These limitations are consistent with the ALJ's RFC analysis.

**C. The ALJ Properly Assessed the Testimony of the Vocational Expert and Provided Adequate Hypotheticals**

The ALJ found that Plaintiff was able to perform several jobs that exist in significant numbers in the national economy. These jobs included medium unskilled occupations such as an order filler, a hospital cleaner, and a sandwich maker. The AJL also found the Plaintiff could perform light unskilled occupations such as a rental clerk and an usher. In reaching this conclusion, the ALJ relied on testimony from the vocational expert ("VE").

Plaintiff argues that the VE's testimony in this case was incomplete because the ALJ erred by failing to summarize the testimony of the claimant for the vocational expert. HALLEX Section I-2-6-74, Testimony of a Vocational Expert, states:

> The VE may attend the entire hearing, but this is not required. If the VE was not present to hear pertinent testimony, such as testimony regarding past relevant work or educational background, the ALJ will summarize the testimony for the VE on the record.

The vocational expert was approximately ten minutes late to Ms. Basty's hearing and the AJL did not summarize the testimony for her. Therefore, Plaintiff claims the VE's testimony did not factor in all the available evidence and was incomplete.

Although it would have been prudent for the ALJ to summarize the first ten minutes of the hearing for the VE, Plaintiff fails to show how she was prejudiced by this omission. Plaintiff does not state what specific testimony was given during the first ten minutes or how that information was pertinent under HALLEX Section I-2-6-74. The VE testified that she "heard most of the discussion" and the evidence she reviewed was "sufficient upon which to render an opinion." (Tr. 82-83.) She also reviewed the record containing the Plaintiff's medical information and work history and noted that it was "certainly complete." (*Id.*) Based on the VE's

testimony, this court concludes that she was able to factor in all the available evidence and the ALJ's failure to summarize the first ten minutes of Plaintiff's testimony was a harmless error.

Plaintiff also argues that the hypotheticals set forth by the ALJ were improper because the ALJ did not fairly set out Ms. Basty's impairments. In his decision, the AJL wrote, "I asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functioning capacity." (Tr. 22.) Plaintiff argues that the ALJ's question did not properly outline each of Ms. Basty's impairments for the VE and was thus an inadequate basis for the VE's assessment of potential employment opportunities.

This Court finds the ALJ's hypothetical was properly posed to the vocational expert. The Fourth Circuit has held that, "[f]or a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). However, the ALJ, "has great latitude in posing hypothetical questions … so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, *5 (4th Cir. 1999). As previously noted in "Section B," *supra*, the ALJ did not err in evaluating the claimant's RFC and his analysis was based on substantial evidence.  While not evident from the ALJ's written decision, in the hearing, the ALJ posed a number of hypotheticals to the VE in an attempt to fully capture the extent to which Plaintiff Basty's limitations erode the unskilled medium occupation base. For instance, the ALJ's hypotheticals explored the impact on a right-handed claimant such as Ms. Basty an RFC of varying functional limitations with both her right and left upper extremities might have − functional limitations discussed ranged from never / no use, occasional use,

frequent use, and constant use. (Tr. 82−87). The VE's testimony in response to each

hypothetical posed took into account Ms. Basty's manipulative limitations and impairments and

the degree that her functional limitations would preclude her from performing a given type of

job. (Tr. 82−87). The hypotheticals the ALJ posed to the VE adequately reflected the ALJ's

RCF finding. The VE identified jobs existing in significant numbers in the national economy for

the first two hypotheticals, namely, order filler, hospital cleaner, rental clerk, and usher.[5] (Tr.

83−86).

### D. The ALJ Properly Assessed the Credibility of the Claimant

Plaintiff argues that the ALJ erred in his decision to give limited weight to the claimant's

testimony. Social Security Ruling 96-7p states that an ALJ must give detailed, specific reasons

for his decision to give the claimant's testimony limited weight. The ruling states:

> The determination or decision must contain specific reasons for the
> finding on credibility, supported by the evidence in the case record,
> and must be sufficiently specific to make clear to the individual and to
> any subsequent reviewers the weight the adjudicator gave to the
> individuals' statements and the reasons for that weight.

SSR 96-7p, *available at* 1996 WL 374186, at *2.

The ALJ is required to follow a two-step process in evaluating the claimant's symptoms.

*See Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996). First, the ALJ, "must consider whether

there is an underlying medically determinable physical or mental impairment … that could

reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p; *Craig*,

76 F.3d at 594 (step one is to consider objective medical evidence of impairment reasonably

expected to produce the alleged actual degree and amount of pain). Second, "the adjudicator

---

[5] In contrast, according to the VE, the third hypothetical posed by the ALJ contemplating "right upper extremity handling, fingering, and feeling would be never, left upper extremity would be occasional" would result in a finding of disability. (Tr. 86).

must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to

determine the extent to which the symptoms limit the individual's ability to do basic work

activities." *Id*. During this second step, the ALJ will evaluate the claimant's statements about the

intensity, persistence, or functionally limiting effects of pain to determine whether the claimant's

testimony is substantiated by objective medical evidence. The ALJ must consider the entire case

record in making a finding of credibility of the claimant's statements.

In *Mascio v. Colvin*, the Fourth Circuit recently observed that, in following the two-step

process, adjudicators often use boilerplate language to assess the Plaintiff's credibility.[6] 780

F.3d 632 (4th Cir. 2015). Such boilerplate language, as used in the case at bar, reads:

> After careful consideration of the evidence, I find that the claimant's
> medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements
> concerning the pain, intensity, persistence and limiting effects of these
> symptoms are not credible to the extent they are inconsistent with the
> above residual functioning capacity assessment."

(Tr. 24). The Fourth Circuit took issue with this practice in *Mascio* and explained that this

boilerplate language implies the adjudicator assessed the claimant's RFC *before* determining his

or her credibility. 780 F.3d 632, 639−40 (4th Cir. 2015). The *Mascio* court noted that this

approach "gets things backwards" by implying "that ability to work is determined first and then

used to determine the claimant's credibility. *Id*. at 639. However, the *Mascio* panel also

recognized that, "the ALJ's error would be harmless if he properly analyzed credibility

elsewhere." *Id*.

---

[6] This Court ordered the parties to address the ruling in *Mascio v. Colvin*, 790 F.3d 632 (4th Cir. 2015), as it applies to this matter.

Here, the ALJ properly evaluated the credibility of the claimant's testimony. The ALJ satisfied the first prong of the two-step process outlined in SSR 96-7p by noting, "[the Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." The AJL found the Plaintiff's impairments could in fact result in the symptoms she described. (Tr. 24).

The AJL then went on to analyze the claimant's testimony of the alleged symptoms in accordance with the second prong of the applicable test. (Tr. 24−25). In his opinion, the ALJ wrote, "I have no choice but to draw inferences from the claimant's inconsistences in her testimony and the objective medical evidence in the record." (Tr. 25.) The AJL cited several factual inconsistencies that contributed to his decision to give the Plaintiff's testimony limited weight. He noted that the Plaintiff testified that she completed the 10th grade, however in her disability application she indicated she had only finished the 9th grade. (Tr. 25.) Additionally, the ALJ stated that at the hearing, the Plaintiff stated her boyfriend was self-employed, however at a consultative examination she stated he did not work. (Tr. 25.) Plaintiff also testified she smoked 2 cigarettes per day, but medical records showed she smoked ½-1 packs per day. (Tr. 25.) The ALJ found these factual inconsistencies in the Plaintiff's testimony eroded her credibility.

With regard to Plaintiff's testimony about the limiting effects of her symptoms, the ALJ found Plaintiff's testimony was inconsistent with diagnostic tests and activities of daily living. Plaintiff testified that she was physically unable to "do anything" because of the pain in her hands. (Tr. 77.) In fact, Plaintiff Basty testified that she was unable to hold onto a broom, a mop, or a vacuum handle, unable to cook or wash dishes, unable to take out the trash or do any cleaning. (Tr. 76−78). Ms. Basty testified that when she tried to dust, the rag or dust cloth "just

flies out of [her] hand." (Tr. 78). When asked whether she was able to do any yard word, Ms. Basty testified "I try to, but I can't, can't hardly hold anything in my hand. . . ." (Tr. 78). The ALJ asked if Ms. Basty was capable of driving and Plaintiff's initially response was, "No, sir, not really." (Tr. 78). Plaintiff subsequently testified that she didn't "drive very often; [m]aybe once a week." (Tr. 78–79). The ALJ questioned Ms. Basty's credibility as to her daily activities and noted that on March 24, 2010, Plaintiff went to Angel Urgent Care Center complaining of a rash after she cleared out her garden. (Tr. 25) (Exhibit B4F). Plaintiff also testified she had cervical pain which was so severe she was unable to hold her neck up. However, physical examinations of the Plaintiff revealed no cervical spasms and the Plaintiff was not found to appear in any acute distress. (Tr. 25). The ALJ cited these inconsistencies as reason for giving limited weight to Plaintiff's testimony about the severity of her pain and limiting effects of her symptoms.

The ALJ properly followed the two-step process in assessing the claimant's credibility and gave a detailed explanation of his decision to give Plaintiff's testimony limited weight. Although he used the boilerplate language which was found to be problematic by the court in *Mascio*, his error was harmless because he "properly analyzed credibility elsewhere." *Mascio*, 780 F.3d at 639. His finding with regards to the claimant's credibility is adequately supported by substantial evidence including factual inconsistencies and discrepancies between Plaintiff's testimony and objective medical evidence. Thus, the ALJ did not err in his decision to give Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms limited weight.

## V.  CONCLUSION

This Court concludes that there is substantial evidence to show: (1) the AJL properly evaluated the opinions of Plaintiff's treating and examining physicians; (2) the ALJ correctly assessed the Plaintiff's residual functioning capacity; (3) the ALJ properly followed agency policy in relying on the vocational expert; and (4) the ALJ properly assessed the credibility of the claimant. For the foregoing reasons, the Court determines that the Commissioner's decision must be <u>affirmed</u>.

## VI. ORDER

**IT IS, THEREFORE**, **ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED.**  The Commissioner's decision is **AFFIRMED.**

Signed: September 9, 2015

Richard L. Voorhees
United States District Judge